# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| RICK R. SIMS, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-05-2842 |
| § | |
| TEXAS DEPARTMENT OF HOUSING § | |
| AND COMMUNITY AFFAIRS, *et al.,* § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND OPINION

Rick R. Sims filed this lawsuit *pro se* against the Texas Department of Housing and Community Affairs (TDHCA) and its board members and certain of its employees, Brooke Boston, Jennifer Joyce, Emily Price, C. Kent Conine, Edwina Carrington, Elizabeth Anderson, Shadrick Bogany, Patrick Gordon, Norberto Salinas, in their official capacity. Sims alleged violations of the Fair Housing Act, 42 U.S.C. § 3601; Title II of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12131 *et seq.*; and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Docket Entry Nos. 1, 19). Defendants moved to dismiss for lack of subject matter jurisdiction, failure to state a claim on which relief can be granted, and, alternatively, to transfer venue to the Western District of Texas. (Docket Entry No. 15). Sims has responded, (Docket Entry No. 16), and defendants have replied, (Docket Entry No. 18). Defendants have also moved for a more definite statement. (Docket Entry No. 17). In response, Sims filed an amended complaint, in which he dropped his claims

against defendants Brooke Boston, Jennifer Joyce, and Emily Price. (Docket Entry No. 19 at 6). The remaining defendants conditionally moved to withdraw their motion for more definite statement and reurged their motion to transfer and to dismiss. (Docket Entry No. 22). This court grants leave to file the amended complaint and, after reviewing the amended complaint, and the motion, responses, and applicable law, grants defendants' motion to dismiss for lack of subject matter jurisdiction and, by separate order, dismisses this case. The remaining motions are denied as moot. The reasons for these rulings are explained below.

## I.    Background

Sims applied for tax credits under the Housing Tax Credit Program. This Program was created by the Tax Reform Act of 1986 to distribute federal grant money to states, which in turn administer programs that provide tax credits to developers of low-income rental housing. In Texas, the TDHCA administers the Housing Tax Credit Program. Sims applied to the TDHCA for tax credits in 2004 and 2005 to develop, construct, and operate a multifamily residence in the City of Houston for homeless families with disabilities ranging from post-traumatic stress disorder to alcoholism and substance abuse. On both occasions, the TDHCA denied Sims's application. Sims was not alone: according to the defendants, in 2004, only 74 of 187 applications received tax credits under the Program.

In this lawsuit against the TDHCA and several employees and members of the TDHCA board, Sims asserts that the defendants discriminated against him and the potential beneficiaries of Sims's proposed development in denying his proposal. Sims asserts that his handicap is that he is a recovering drug addict. Sims asserts that he, and those whom he

seeks to assist, are disabled and alleges that the tax credits for his proposed housing project was denied because of discrimination on the basis of their disabilities. Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim.

## II.     The Rule 12(b)(1) Motion

### A.     The Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). In examining a factual challenge to subject matter jurisdiction under Rule 12(b)(1), which does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see also*

*Clark*, 798 F.2d at 741. The court may consider matters outside the pleadings, such as testimony and affidavits. *See Garcia*, 104 F.3d at 1261.

### B. The Issue of Standing

Defendants contend that Sims lacks standing to pursue his claims. Standing is a jurisdictional requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[T]he irreducible constitutional minimum of standing is composed of three elements. First, the plaintiff must have suffered an 'injury in fact'— an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Walker v. City of Mesquite*, 169 F.3d 973, 978–79 (5th Cir. 1999) (quoting *Lujan*, 504 U.S. at 560–61) (footnote, citations, and internal quotation marks omitted)). Failure to establish any one of these three standing requirements deprives a federal court of subject matter jurisdiction to hear a lawsuit. *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 332 (5th Cir. 2002).

### 1. Claims Raised by Sims On His Own Behalf

Construing the amended complaint broadly, Sims alleges that defendants discriminated against him in violation of the ADA, the Rehabilitation Act, and the Fair Housing Act. Defendants' motion to dismiss contends that Sims lacks standing to bring any of these claims.

The amended complaint makes it clear that Sims lacks standing to pursue a Fair Housing Act claim. Sims alleges that defendants discriminated against him on the basis of his handicap when he attempted to acquire tax credits that he intended to use to purchase and develop land that would in turn be leased to or occupied by handicapped individuals. The Fair Housing Act protects potential buyers or renters from discrimination, including discrimination based on handicap or disability. *See* 42 U.S.C. § 3604(f)(1) (2000). The Fair Housing Act does not protect potential landlords or potential real estate owners, even if they want to promote the availability of rental or other real estate to handicapped residents. Sims has not alleged that defendants themselves lease or own any land he sought to purchase or develop, or defendants interfered with any attempt he made to purchase or rent land. Sims has not alleged any injury cognizable under the Fair Housing Act. Additionally, no remedy conferred by the Fair Housing Act responds to Sims's alleged injury. Because Sims has failed to plead a concrete injury that the relief he seeks under the Fair Housing Act can remedy, he lacks standing to assert the claim, and this court lacks jurisdiction over his Fair Housing Act claim.

Sims has also alleged violations of the ADA and the Rehabilitation Act. The amended complaint refers to Title II of the ADA and § 504 of the Rehabilitation Act, as follows:

> This suit alleges, in sum, that the Defendant [sic] has violated Title II by: (1) failing to ensure that the Texas Department of Housing and Community Affairs ("TDHCA") with whom was created by statue [sic] to administer The Housing Tax Credit Program that was created by the Tax Reform Act of 1986 and was first utilized by the real estate development community during the calendar year 1987. Defendant's [sic] Motion for

>Dismissal p.2 (B) paragraph 1, and the Qualified Allocation Plan ("QAP) [sic] denies the right of person [sic] or groups protected by Title II of the ADA and § 504 of the Rehabilitation Act and 42 U.S.C. § 3601, et seq.  Plaintiff [sic] Complaint p.1, ¶1.  (3) failing to ensure that, when administering the QAP such rules, policies and scoring did not deny individual [sic] applying for tax credit or groups affected by the tax credits, the benefits of the services, programs or activities of a public entity, or be subject to discrimination by such entity.

(Docket Entry No. 19 at 4–5).  Sims also invokes 42 U.S.C. § 3613(e) and 28 C.F.R. § 39 (Docket Entry No. 19 at 4) and "Section 35.101" (*id.*), which this court assumes to mean 28 C.F.R. § 35.101, the regulations promulgated under Title II of the ADA.

As with Sims's Fair Housing Act claims, the Rehabilitation Act and ADA provisions Sims relies on relate to allegations of discrimination by an individual or entity directly involved with real estate, such as a landlord or an apartment complex.  Sims does not allege that he sought housing from defendants that was denied on the basis of his handicap.  Nor has he alleged that the TDHCA, a tax-credit conferring agency, is an entity that offers, sells, or rents housing.  Sims has failed to allege an injury under the ADA and lacks standing to raise a claim under the ADA or the Rehabilitation Act.  This court must dismiss these claims for lack of subject matter jurisdiction.[1]

---

[1] Because Sims lacks standing to assert claims under any of the three statutes, this court need not address the sovereign immunity claims defendants raise .

### *2.     Claims Sims Raised on Behalf of Others*

Sims also asserts claims on behalf of the potential residents of his rejected proposed housing. These claims are barred because Sims himself lacks standing. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Alternatively, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, the Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* The prohibition on third-party standing is subject to three exceptions: if the third party is unlikely to be able to sue; if there exists a close relationship between the advocate and the third party; and First Amendment challenges based on the overbreadth doctrine. *See Sec'y of State v. J.H. Munson Co.*, 467 U.S. 947, 956 (1984) (exception one); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535–36 (1925) (exception two); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634 (1980) (exception three).

None of the exceptions to the prohibition against third-party standing applies. Sims alleges that defendants' "actions in refusing to approve the Rick Sims application for tax credit were taken on account of the handicap of the prospective residents of the facility." (Docket Entry No. 19 at 18). Sims further alleges that "refusal to allow Rick Sims to develop, construct, and establish the housing facility Zion Village, Ramah Village And [sic] Depriest Gardens constitutes a denial to a group of persons of rights granted by" the various laws Sims cites. (*Id.*). Additionally, Sims alleges that he "and other persons who have been, or who may have been, the victims of the defendants [sic] discriminatory practices are

aggrieved persons, as defined in 42 U.S.C. § 3602(i) by Title II of the ADA and § 504 of the Rehabilitation Act.  These persons have suffered, or may have suffered, damages as a result of the defendant's [sic] conduct." (Docket Entry No. 19 at 18).  Sims has not asserted that the individuals for whom he attempts to bring this lawsuit are unable to sue in their own right, as necessary for the first exception.  Sims's allegations are not based on a First Amendment overbreadth challenge, as necessary for the third exception.  The only exception to the ban on third-party standing is that Sims could be in a "close relationship" with the other plaintiffs, as defined by the Supreme Court under the second exception.

The second exception is tightly circumscribed.  A third-party may, for example, bring a claim on behalf of another individual if "the enjoyment of the [third party's] right is inextricably bound up with the activity the litigant wishes to pursue." *Cf. Singleton v. Wulff*, 428 U.S. 106, 114–15 (1976) (permitting doctors to sue on behalf of patients challenging limits to patients' access to abortion and contraceptives); *Craig v. Boren*, 429 U.S. 190 (1976) (permitting a bartender to challenge a law that permitted women to consume alcohol at age 18 but prohibited men from consuming alcohol until age 21); *Pierce*, 268 U.S. at 535–36 (parochial school permitted to bring claim challenging state law requiring all students to attend public schools).  The second exception is related to the first in that the Supreme Court has frowned on permitting third-party standing when the directly-injured individual cannot or does not pursue his own claims. *Cf. Gilmore v. Utah*, 429 U.S. 1012, 1016 (1976) (Burger, C.J., concurring) (mother of a death row inmate did not have third-party standing to pursue appeals on her inmate son's behalf after the son voluntarily waived his rights to

appeal); *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990) (holding that a death row inmate did not have standing to challenge the validity of a death sentence imposed on another inmate who chose to forego his right of appeal to the state supreme court).  A close relationship, in and of itself, does not permit third-party standing.  *See, e.g.*, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 17–18 (2004) (rejecting a father's claim of standing to sue on behalf of his daughter after a state family court refused to allow the father to sue as his daughter's "next friend").

The potential beneficiaries of Sims's project are unlike the bar patrons in *Craig v. Boren* because Sims has not alleged that defendants have barred the potential beneficiaries from low-income housing.  The proposed plaintiffs' rights to be free from discrimination based on their handicaps are bound up with Sims's goal of developing housing only in an attenuated and speculative sense.  Sims has not alleged that any identifiable individual has been unable to obtain housing because of defendants' denial of Sims's tax-credit application.  Instead, Sims's complaint is that his particular project did not receive tax credits.  The alleged injury is "hypothetical and conjectural."  *Lujan*, 504 U.S. at 560.

Sims lacks standing to assert claims on behalf of the third-party potential beneficiaries of his proposed project.  The claims he brings on behalf of the third-party potential beneficiaries are dismissed for lack of subject matter jurisdiction.

## IV.     Conclusion

Defendants' motion to dismiss for lack of subject matter jurisdiction is granted. This case is dismissed by separate order.

SIGNED on November 21, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge